UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| CITY OF HENDERSON, KENTUCKY, *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| PURDUE PHARMA L.P., *et al.*, | ) | |
| | ) | Civil No. 3:19-cv-00067-GFVT |
| Defendants; | ) | Civil No. 3:19-cv-00068-GFVT |
| | ) | |
| and | ) | |
| | ) | **MEMORANDUM OPINION** |
| HARDIN COUNTY FISCAL COURT, *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | |
| | ) | |
| PURDUE PHARMA L.P., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

\*\*\*    \*\*\*    \*\*\*    \*\*\*

These two substantially similar cases were both filed in state court on September 13, 2019 and subsequently removed by Defendant Beverly Sacker.  [*See, e.g.*, R. 1, 3:19-cv-00067-GFVT.][1]  These matters are now before the Court on two pending motions, filed in each case: The Defendant Commonwealth of Kentucky's Motion to Dismiss [R. 108], and the Defendant McKesson Corporation's Motion to Stay further proceedings pending a ruling by the Judicial

---

[1] As the filings in each case are substantially similar, for present purposes, any citation to the record that does not indicate otherwise will refer to filings in *City of Henderson, Kentucky, et al., v. Purdue Pharma L.P, et al.,* Civ. No. 3:19-cv-00067-GFVT.

Panel on Multidistrict Litigation (JPML) concerning the transfer of these actions to a consolidated Multidistrict Litigation (MDL) case, *In re: National Prescription Opiate Litigation*, MDL No. 2804. [R. 106.] For the reasons explained below, both the Motion to Dismiss and Motion to Stay will be GRANTED in each case.

**I**

These two cases are related to hundreds of other lawsuits that have been filed throughout the country in recent years.  In these lawsuits, plaintiffs typically allege that certain defendants misrepresented the safety and the addictive properties of prescription opioids, failed to comply with relevant legal standards and requirements, and engaged in deceptive conduct that resulted in prescription opioids being over-distributed and over-prescribed.  On December 5, 2017, the JPML determined that a large number of cases related to these allegations should be centralized for pretrial proceedings and formed MDL 2804 in the Northern District of Ohio to coordinate the resolution of these actions.  *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1378 (JPML 2017).  Since that time, well over 2,000 cases have been transferred to the MDL Court.  *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-MD-2804, 2019 WL 4686815, at *1 (N.D. Ohio Sept. 26, 2019).

The two cases before the Court were originally filed by Plaintiffs in Franklin County Circuit Court, Franklin County, Kentucky on September 13, 2019.  [R. 1-2.]  Defendant Sackler subsequently removed to federal court under the Class Action Fairness Act of 2005 (CAFA), 28 U.S.C. § 1332(d).  [R. 1.]  After the initial removal, Defendant McKesson filed a supplemental notice of removal, asserting that removal via 28 U.S.C. § 1441 was also proper on the basis of federal question jurisdiction under 28 U.S.C. § 1331 and, relatedly, asserting supplemental jurisdiction under 28 U.S.C. § 1367(a).  [R. 81 at 6, 18.]  The JPML then issued a Conditional

Transfer Order identifying the present cases as "involv[ing] questions of fact that are common to the actions previously transferred to" the MDL Court.  [R. 106-2.]  Following removal, and pending the final determination by the JPML of whether these cases should be consolidated, numerous motions have been filed which now require the Court's attention.

On October 28, 2019, shortly after these actions were removed, Plaintiffs in each case filed a motion to remand to state court.[2]  [R. 85.]  Defendant McKesson responded in opposition to those motions and has now also moved to stay further proceedings pending the imminent determination by the JPML.  [R. 106.]  Additionally, Defendant Commonwealth of Kentucky filed motions to dismiss the claims against it in each case.  [R. 108.]  Both Plaintiffs and Defendant Commonwealth have also filed motions to expedite the rulings regarding their respective motions.  [R. 86; R. 109.]  These motions have now been fully briefed, the Court has considered the arguments of the parties and applicable law, and this Opinion is the result.

## II

## A

The Court will first address Plaintiffs' motions for remand and Defendant McKesson's competing motions to stay pending potential transfer to the MDL.  [R. 85; R. 106.]  McKesson wishes to stay all proceedings, including the remand motions, until the JPML finally resolves the transfer issue.  [R. 106 at 1.]  On the other hand, Plaintiffs argue this Court should rule on its motions to remand before the JPML concludes that process.  [R. 85 at 1; R. 119 at 2.]

---

[2] As noted above, the filings in these cases are substantially similar.  For example, the arguments included in Plaintiffs' motion to remand in the related case [R. 86, *Hardin Fiscal Court, et al., v. Purdue Pharma L.P, et al.,* Civ. No. 3:19-cv-00068-GFVT], are identical to the arguments made by the Plaintiffs in Civ. No. 3:19-cv-00067-GFVT, both arguing, in part: "First, as a dispositive procedural requirement, McKesson's notice is not supported by all of the defendants." [R. 85 at 1; R. 86 at 1, *Hardin Fiscal Court,* Civ. No. 3:19-cv-00068-GFVT.]

The decision whether to grant a stay is discretionary because "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (Cardozo, J.); *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1047 (E.D. Wis. 2001) (quoting *Landis*, 299 U.S. at 254, as support for the district court's power to stay a case pending transfer by the JPML).  As relevant in the present context, the Manual for Complex Litigation notes that a "stay pending the Panel's decision can increase efficiency and consistency, particularly when the transferor court believes that a transfer order is likely and when the pending motions raise issues likely to be raised in other cases as well."  Manual for Complex Litigation (4th ed.) § 22.35 (2005).  Further, 28 U.S.C. § 1407 specifically authorizes the JPML to transfer cases even when there is a motion to remand pending in the district court, although the JPML's consideration of transfer does not deprive the district court of its own inherent authority to rule on the remand motion itself.  *See* Judicial Panel on Multidistrict Litigation, Rule 2.1(d).  Therefore, this Court has the power to resolve the instant motions despite the ongoing JPML process.  The issue here is whether to exercise the Court's discretion to issue a temporary stay in each of these cases or to immediately remand to state court.

In making this determination, the Court notes that some courts choose to rule on pending motions to remand before the JPML decides to transfer the case, while many other courts decide to issue a stay pending the JPML's decision even when a motion to remand is also pending. *Compare, e.g.*, *Kantner v. Merck & Co.*, 2005 WL 277688 (S.D. Ind. Jan. 26, 2005) (ruling on remand motion before any potential transfer by JPML); *with Benge v. Eli Lilly & Co.*, 553 F. Supp. 2d 1049 (N.D. Ind. 2008) (staying all proceedings pending final resolution by JPML

concerning transfer); *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48 F. Supp. 2d 37, 43 (D.D.C. 1999) (same); *Rivers v. The Walt Disney Co.*, 980 F. Supp. 1358 (C.D. Cal. 1997) (same). Indeed, as briefed at length by the parties, in many cases related to the litigation at hand courts have also issued stays while others have chosen to remand the case before the question of transfer is fully resolved. [*See* R. 106-3 through R. 106-18 (including as exhibits multiple cases related to the instant litigation where stays were issued pending a JPML ruling); R. 119 at 3 n. 3, 5 (citing and discussing several cases related to the instant litigation where district courts remanded actions during the pendency of conditional transfer orders).] Invariably, however, courts consider the interests of judicial economy and potential prejudice or hardship to the parties—an inquiry which is necessarily specific to the individual facts and procedural posture of each case, and which is likely the main cause for the apparent divergence of approaches.

In considering the present cases, the Court finds persuasive the extensive and thoughtful explanation behind the approach adopted in *Meyers v. Bayer AG*. 143 F. Supp. 2d at 1049. In that case, the court employed an approach by which the district court makes a preliminary assessment of jurisdiction, and if, upon such assessment, jurisdiction is clearly improper, "the court should promptly complete its consideration and remand the case to state court." *Id.* If jurisdiction is not clearly improper, the district court is then to turn to additional considerations in making its stay determination. *Id.* Although not binding, this reasoned approach also seems consistent with guidance concerning the MDL process in general, which provides that a primary reason for denying a stay pending the panel's decision on transfer is when federal jurisdiction is clearly absent. Manual for Complex Litigation (4th ed.) § 22.35.

In light of the JPML's pending decision concerning the previously issued conditional transfer order, the appropriate inquiry here is not necessarily the eventual possibility that these cases *could* be remanded to state court, but rather whether there is any reasonable possibility that federal jurisdiction exists.  Stated otherwise, this Court will inquire as to whether federal jurisdiction is *clearly* absent.  Manual for Complex Litigation (4th ed.) § 22.35; *see also Meyers*, 143 F. Supp. 2d at 1047–52.  This preliminary assessment of jurisdiction is critical because, after all, the jurisdictional question is about the Court's very power to decide the case.  If federal jurisdiction is clearly absent, then the court should complete its consideration and remand the case to state court.  *Meyers*, F. Supp. 2d at 1049.  If, however, "the jurisdictional issue appears factually or legally difficult," the court should "determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding." *Id.*  If so, the court should proceed to the third step of weighing the relevant factors to be considered in determining whether to grant the motion to stay. *Id.*  Thus, the Court first will assess the clarity of federal jurisdiction and resolve the present motions to stay accordingly.

**B**

**1**

A preliminary assessment of jurisdiction in these cases does not reveal that federal jurisdiction is clearly absent.  In the motions for remand, Plaintiffs attack both bases for removal relied upon by Defendant McKesson, removal under CAFA, 28 U.S.C. § 1332(d), and removal on the basis of federal question jurisdiction under 28 U.S.C. § 1331.  The Court has given preliminary consideration to these jurisdictional issues and concludes that the questions of

whether jurisdiction exists on either of these jurisdictional bases are factually and legally complicated.

The jurisdictional issues present in the briefing involve colorable arguments on each side. Notably, these issues include (1) whether Plaintiffs engaged in "artificial structuring" of class size to avoid CAFA jurisdiction [R. 85 at 4; R. 107 at 6], (2) whether Plaintiffs' underlying theory of liability is in fact based on legal duties arising under the federal Controlled Substances Act, 21 U.S.C. § 1331, such that federal question jurisdiction is proper [R. 85 at 11; R. 107 at 20] and (3) whether there was lack of unanimous consent to removal [R. 85 at 8–9; R. 107 at 15–17]. In addition to their complexity, these issues are likewise clearly similar to the types of jurisdictional issues that the MDL court has before it already or is likely to encounter.  [*See* R. 106 at 8 n.4 (citing numerous cases which have already been transferred to the MDL in which "the jurisdictional issues presented in this action" are also present.").]

**2**

Finally, because "the jurisdictional analysis is both difficult and common," the Court next considers the propriety of a stay.  *Meyers*, 143 F. Supp. 2d at 1053.  Here, the Court is to weigh the following factors: "(1) the interests of judicial economy; (2) hardship and inequity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party."  *Id.* (citing *Rivers*, 980 F. Supp. at 1360).  "Whether or not to grant a stay is within the court's discretion and it is appropriate when it serves the interests of judicial economy and efficiency."  *Rivers*, 980 F. Supp. at 1360.

Here, the sheer number of related cases, many of which also involve the same jurisdictional issues, weighs in favor of a stay in the interests of judicial economy.  *See Meyers*, 143 F. Supp. 2d at 1053.  A stay pending the JPML's decision can increase efficiency and

consistency particularly "when the pending motions raise issues likely to be raised in other cases as well." Manual for Complex Litigation (4th ed.) § 22.35. As such, "judicial economy is served by a stay pending transfer if the issues involved in the remand motion are likely to arise in the cases that have been or will be transferred to the MDL transferee court." *Fox v. DePuy Orthopaedics, Inc.*, 2011 WL 6057509, *1 (W.D. Ky. Dec. 6, 2011) (quoting *Ayers v. ConAgra Foods, Inc.*, 2009 WL 982472, *1 (S.D. Tex. April 9, 2009). The similarity between these cases and others is underscored by the JPML's recognition of the existence of common questions of fact. *See* 28 U.S.C. § 1407(a). Perhaps most convincingly on this "similarity factor," specifically as it relates to those claims brought under Kentucky law, the Court notes the twenty-plus cases that were originally brought by similarly-situated Kentucky plaintiffs and subsequently transferred to the MDL as part of the first wave of transfers. *See In re Nat'l Prescription Opiate Litig.*, 290 F. Supp. 3d 1375, 1380 Sched. A (U.S. Jud. Pan. Mult. Lit. 2017).

Additionally, the procedural posture of these cases weighs in favor of granting a stay. Here, the JPML has already issued a conditional transfer order including both cases, which is currently being challenged. [R. 106-2.] Thus, the parties presumably are making similar arguments before the JPML already, and those arguments are currently being considered by a body possessing the advantage of familiarity with the facts and legal issues of hundreds of other related cases. To deny the stays and definitively rule on the remand motions at this juncture would needlessly duplicate and waste judicial resources.

As for prejudice, neither party has shown that granting or denying a stay will cause significant hardship to either of them. Despite the Plaintiffs' contentions to the contrary, a temporary stay will not result in Plaintiffs being "placed in the litigation equivalent of purgatory .

8

. .”  [R. 119 at 5.]  To acknowledge such an argument as persuasive would call into question the usefulness of any MDL proceeding.  Further, the JPML has recognized that remand motions can be decided post-transfer and can be resolved by the transferee judge.  *In re: Bayer Corp. Combination Aspirin Prods. Mktg & Sales Practices Litig.*, 609 F. Supp. 2d 1379, 1379–80 (J.P.M.L. 2009) (finding plaintiffs can still “present their motion to remand to state court to the transferee court” and thus are not deprived of that right by a transfer to the MDL court); *In Re: Prudential Ins. Co. of Am. Sales Practices Litig.*, 170 F. Supp. 2d 1346, 1347 (J.P.M.L. 2001) (the same).  Thus, not only are Plaintiffs able to present their jurisdictional arguments before the JPML in the context of challenging the conditional transfer order, but they can also make the same arguments before the MDL Court if the cases are ultimately transferred.  The MDL Court also will have the benefit of complete familiarity with the facts alleged within the broader context of other cases, and therefore its resolution of the pending remand motions will prevent the risk of inconsistent rulings.  Manual for Complex Litigation (4th ed.) § 22.35.  Moreover, given the advanced stage of the challenge to the conditional transfer order, any stay issued will likely be of very short duration, and no significant delay will result.  Indeed, McKesson represents that it anticipates the JPML will likely make a transfer decision at or shortly following its January 30, 2020 hearing.  [R. 106 at 5, 10.]

The court system’s interest in judicial economy, fairness, and consistency is the factor that weighs most heavily in favor of granting a stay in this case.  Given the fact that thousands of similar cases have been transferred already, and the likelihood of many more cases being in a similar procedural posture, the interests of judicial economy and the threat of inconsistent rulings outweighs any potential prejudice to the Plaintiffs in these two cases.  *See Torres v. Johnson & Johnson*, 2014 WL 6910478, *3 (D.N.M. Sept. 16, 2014) (“Judicial resources are conserved by

staying the action because, if the transfer order is ultimately granted, the Court will have needlessly expended its energies familiarizing itself with the intricacies of a case that would be heard by another judge.").  As other district courts within the Sixth Circuit have recognized, the "general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the [JPML] has transferred the case." *Kelly v. Aultman Physician Center*, 2013 WL 2358583, *2 (N.D. Ohio May 29, 2013) (quoting *Jackson v. Johnson & Johnson, Inc.*, No. 01–2113, 2001 WL 34048067, at *6 (W.D. Tenn. April 3, 2001)).  Where jurisdictional issues "are complex and their resolution is uncertain," and where such issues "are common to other cases already pending before the MDL court . . . and are likely to arise again," they "should be decided by the court overseeing the related cases on a coordinated basis." *Curtis v. BP Am., Inc.*, 808 F. Supp. 2d 976, 981 (S.D. Tex. 2011) (citing *Bd. of Trustees of the Teachers' Retirement Sys. of Ill. v. Worldcom, Inc.*, 244 F. Supp. 2d 900, 905 (N.D. Ill. 2002); *In re Penn Cent. Sec. Litig.*, 333 F. Supp. 382, 384 n. 4 (J.P.M.L. 1971) ("A stay of proceedings ... may be appropriate ... to avoid inconsistent judicial rulings."); Manual for Complex Litigation (4th ed.) § 22.35.  The Court will grant the stay requested by Defendant McKesson in each case.

### III

### A

Generally, as established above, stays in these two cases are proper.  However, the claims against Defendant Commonwealth of Kentucky and the Commonwealth's subsequent Motions to Dismiss warrant further consideration at this time.  As noted, Rule 2.1 of the Judicial Panel on Multidistrict Litigation provides that the pendency of a conditional transfer order does not deprive a district court of its pretrial jurisdiction.  Judicial Panel on Multidistrict Litigation, Rule 2.1(d); *see also* Manual for Complex Litigation (4th ed.) § 22.35 (2005) ("[A] court may,

however, have motions to remand [or] motions to dismiss . . . filed before the MDL Panel rules. A court in that position has the authority to grant or deny a motion . . . pending the Panel's decision on transfer.").  As such, it is within this Court's discretion to address any motions that warrant immediate attention which, here, include the Commonwealth's Motions to Dismiss.[3] [R. 108.]

As stated in Plaintiffs' amended complaints, the claims against the Commonwealth stem from its alleged failure to "fulfill their statutory obligations to police and regulate the manufacture, marketing, distribution, sale and dispensing of opioids."[4]  [R. 5 at 154; *see also id.* at 182–83 (including claims against "Kentucky Governmental Defendants" for Declaratory Relief; Injunctive Relief; and a Writ of Mandamus).]  Plaintiffs' amended complaints further acknowledge that the Commonwealth "is a sovereign state and governmental entity."[5]  *Id.* at 45. In response to these claims against it, the Commonwealth has filed motions to dismiss, claiming it is entitled to sovereign immunity.  The Commonwealth specifically argues that, in each case, "all of the Plaintiffs' purported claims against the Commonwealth are clearly barred by the Eleventh Amendment doctrine of sovereign immunity . . ."  [R. 108-1 at 2.]

**B**

The Commonwealth moves for dismissal of the claims against it pursuant to Rule 12(b) of the Federal Rules of Civil Procedure.  [R. 110.]  Although not explicitly stated, as the

---

[3] The Commonwealth has filed a motion to dismiss in each case.  [*See* R. 110, *Hardin Fiscal Court, et al., v. Purdue Pharma L.P, et al.,* Civ. No. 3:19-cv-00068-GFVT.]

[4] The identical allegation is included in Plaintiffs' amended complaint in both cases.  [*See* R. 6 at 155, *Hardin Fiscal Court, et al., v. Purdue Pharma L.P, et al.,* Civ. No. 3:19-cv-00068-GFVT.]

[5] Plaintiffs also name certain other state government defendants, including then-Governor Bevin.  [R. 5 at 45.]  As the motions to dismiss are made solely by the Commonwealth on the basis of its status as a separate "sovereign entity" [R. 108-1 at 6], and the other state governmental defendants have not joined its motions, the present analysis will be limited to the claims against the Commonwealth of Kentucky itself.

Commonwealth claims this court does not have subject-matter jurisdiction, it seems the Commonwealth specifically relies on Rule 12(b)(1).  Indeed, Rule 12(b)(1) provides that a defendant may assert lack of subject-matter jurisdiction as a defense.  Fed. R. Civ. P. 12(b)(1).

A motion to dismiss under Rule 12(b)(1) is different from a motion to dismiss under Rule 12(b)(6) because it challenges the Court's power to hear the case before it.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996) (citations omitted).  When jurisdiction is challenged under this rule, the burden is on the plaintiff to prove that jurisdiction exists.  *Id.*  In answering this question, the Court is "empowered to resolve factual disputes" and need not presume that either parties' factual allegations are true.  *Id*.

## C

The Eleventh Amendment generally protects states from suit in federal court.  U.S. Const. amend. XI; *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54–55 (1996).  This Eleventh Amendment protection "is far-reaching and bars all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments . . .."  *Lanier v. Kentucky Com'n on Human Rights,* 2007 WL 2407274, at *2 (W.D. Ky. Aug. 20, 2007) (citing *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100–01 (1984).  Only where Congress has explicitly abrogated a state's immunity to suit by statute, or where the state itself has consented to suit, will a federal court have jurisdiction over a state defendant.  *See Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 242 (1985); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974).  Notably, the Sixth Circuit has held that "the Eleventh Amendment is a true jurisdictional bar that . . . once raised as a jurisdictional defect, must be decided on the merits."  *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015)

The Plaintiffs have not responded in any substantive way to the Commonwealth's present arguments regarding Eleventh Amendment immunity, except to agree with the its assertion that the Court does not have subject matter jurisdiction over these claims, in line with Plaintiffs' motions to remand.  [R. 124 at 1.]  The Court notes that Plaintiffs did not include the claims against the Commonwealth until *after* removal to federal court but will assume that the addition of the Commonwealth was simply undertaken in anticipation of a possible remand back to state court.  [*Compare* R. 1-2, *with* R. 5.]  Regardless, for different reasons than Plaintiffs, this Court agrees that it does not have jurisdiction over Plaintiffs' claims against the Commonwealth in these cases.

Plaintiffs' claims against the Commonwealth seek "all available legal, equitable, declaratory, and injunctive relief . . .."  [R. 5 at 185.]  The amended complaint and subsequent filings fail, however, to show any basis for such relief outside of the amorphous claim that the Commonwealth has failed to "fulfill their statutory obligations to police and regulate the manufacture, marketing, distribution, sale and dispensing of opioids."  *Id.* at 154.  Plaintiffs cite to "KRS 218A and KRS 315" as the statutory sections which provide these "statutory obligations" on behalf of the Commonwealth.  KRS § 218A; KRS § 315.  However, any alleged liability of the state *officers* aside, a brief review of these statutes reveals no provision or language that creates any obligation on behalf of the Commonwealth itself which could result in civil liability.

Even assuming that some obligations on the part of the Commonwealth did exist, it is not readily apparent how claims based on these statutory sections would avoid Eleventh Amendment immunity.  *Lanier*, 2007 WL 2407274, at *2 (citation omitted) ("[Eleventh Amendment] immunity is far-reaching and bars all suits, whether for injunctive, declaratory or monetary relief,

13

against the state and its departments . . ..").  As detailed above, only where Congress has explicitly abrogated a state's immunity to suit by statute, or where the state itself has consented to suit, will a federal court have jurisdiction over a state defendant.  *See Atascadero State Hospital*, 473 U.S. at 242; *Edelman*, 415 U.S. at 673.  First, the Commonwealth has not consented to the present suits [*see* R. 108-1 at 6], and a review of the relevant statutes does not reveal any waiver of immunity or consent on behalf of the Commonwealth to such claims.  Further, as stated by the Commonwealth, "the record is devoid of any evidence that Congress has expressly abrogated the Commonwealth's sovereign immunity under the Fourteenth Amendment" and the Court is unaware of any such Congressional action to this effect.

It is clear that Plaintiffs' claims against the Commonwealth of Kentucky are barred by the Eleventh Amendment.  Moreover, claims against a sovereign state do not appear to be common in other cases which have been or are likely to be transferred to the Opiate MDL and, thus, there is no reason to delay consideration of the present Motions to Dismiss.  As such, in each case these claims must be dismissed.  These dismissals will be with prejudice as to Plaintiffs' further filing in federal court, but without prejudice to whatever right the Plaintiffs might have to pursue claims in state court.  The stays granted as part of this same Opinion and Order have no effect as to the dismissal of the claims against the Commonwealth.

**IV**

While the Court does not definitively hold that federal jurisdiction in this matter is clearly present in these cases, it is also not clearly absent, and therefore in each of these cases a stay is appropriate pending a final rulings from the JPML, which is in the best position to determine whether the cases ultimately should be transferred.  The claims against the Commonwealth of

Kentucky are clearly barred, however, and therefore there is no reason to delay a ruling granting the Motions to Dismiss.

Accordingly, it is hereby **ORDERED** as follows:

1. Defendant Commonwealth of Kentucky's Motions to Dismiss **[R. 108**, Civ. No. 3:19-cv-00067-GFVT; **R. 110**, Civ. No. 3:19-cv-00068-GFVT] are **GRANTED**;

2. All claims in these matters against Defendant Commonwealth of Kentucky are **DISMISSED WITH PREJUDICE** to further filing in federal court, with each party to bear its own costs and attorney's fees;

3. Defendant McKesson Corporation's Motions to Stay Proceedings [**R. 106**, Civ. No. 3:19-cv-00067-GFVT; **R. 106**, Civ. No. 3:19-cv-00068-GFVT] are **GRANTED**; and

4. Subsequent to Defendant Commonwealth of Kentucky's dismissal, all proceedings in these cases, including the filing of responsive pleadings or motions, are **STAYED pending the final decision of the JPML** of whether to transfer the cases to the Northern District of Ohio for consolidation with other related cases.

This the 27th day of January, 2020.

Gregory F. Van Tatenhove
United States District Judge